**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0572n.06
Filed: August 9, 2007

**No. 06-6150**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHRISTOPHER STONE, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KENNEDY, GIBBONS, and McKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Christopher Stone challenges the sentence of 240 months imprisonment imposed by the district court following his convictions for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and conspiracy to violate RICO. Stone argues that the sentence imposed by the district court was both procedurally and substantively unreasonable. We find no defect in the district court's decision, however, and affirm.

I.

On May 22, 2002, a grand jury issued a ten-count indictment charging Stone, among others, with (1) a RICO violation and (2) engaging in a conspiracy to violate RICO. Count One of the indictment charged Stone, William Anthony Johnson, and David Dabney, Sr., with a violation of 18 U.S.C. § 1962(c). Count Two of the indictment charged Stone, Johnson, and Dabney with conspiring

1

to violate 18 U.S.C. § 1962(c) in violation of § 1962(d). The remaining counts alleged additional criminal conduct by Johnson and Dabney in violation of various federal statutes. Count One further alleged Stone's involvement in four predicate acts of racketeering activity: two separate acts of arson, one act of mail fraud related to one of the acts of arson, and one act of murder related to Stone's alleged involvement in the murder of Sher Bolter–one of his co-conspirators. In order to support a conviction under § 1962(c), the government had the burden of proving, among other things, that Stone was criminally responsible for at least two of these predicate acts. *See* 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" as two or more acts of racketeering).

Following a jury trial, Stone was convicted on both counts and sentenced to 240 months imprisonment. Dabney entered a plea of guilty to all charges against him, agreed to cooperate with the government, and was sentenced to fifty-five months imprisonment. Johnson was tried separately and convicted on multiple counts, including Counts One and Two. Johnson was sentenced to life in prison on both the RICO and RICO conspiracy counts. Stone and Johnson appealed, and a panel of this court affirmed their convictions but vacated Stone's sentence and remanded his case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006).

At the resentencing hearing, the district court first determined the appropriate guidelines range applicable to Stone. Because the jury in Stone's case returned only a general verdict of guilty as to both charges, it is not clear whether the jury found Stone's involvement in each of the four predicate acts charged in Count One beyond a reasonable doubt. The district court agreed with Stone that the Rule of Lenity mandated resolving this ambiguity in Stone's favor. Thus, the district court assumed the jury found him responsible for the two least serious of the four predicate acts: one act of arson and

one act of mail fraud.[1]  The government has raised no objection to the district court's decision.  The

district court, applying U.S.S.G. §§ 2E1.1(a)(2), 2K1.4(a)(1),[2] concluded that Stone's base offense

level was twenty-four and added two points pursuant to U.S.S.G. § 3C1.1 based on obstruction of

justice.[3]  Stone's criminal history placed him in Category VI.  Given the preceding, the advisory

sentencing range for Stone's RICO and RICO conspiracy convictions was 120-150 months

incarceration.  The district court, after reviewing the sentencing factors contained in 18 U.S.C.

§ 3553(a), exercised its discretion to issue a non-guidelines sentence of 240 months incarceration–the

statutory maximum and the identical sentence imposed initially.  Stone timely appealed.

## II.

Stone challenges the sentence imposed by the district court on the ground that it is

unreasonable.  Post-*Booker*, the discretion of a district court in handing down a sentence has been

enhanced, and a sentence will be upheld on appeal if that sentence is "reasonable."  *United States v.*

---

[1]This finding is significant because, under RICO, the maximum sentence that may be imposed is twenty years unless the jury finds that a defendant committed a predicate act that carries the possibility of a life sentence.  *See* 18 U.S.C. § 1963(a).  In such a case, the maximum penalty for a RICO violation is life imprisonment.  *Id.*  One of the predicate acts with which Stone was charged, murder in violation of Ky. Rev. Stat. § 507.020, is a capital offense for which life imprisonment may be imposed upon conviction.  *See id.* §§ 507.020(2), 532.030(1).

[2]It is not clear why the district court, in calculating the base offense level, did not consider the murder with which the indictment charged Stone.  Applying U.S.S.G. § 2A1.1(a), Stone's base offense level would have been forty-three, and his recommended range would have been well above the statutory maximum.  However, the parties do not challenge the district court's guidelines calculation on appeal, and because the district court imposed the statutory maximum, the question of whether the district court should have relied upon a higher guidelines range is irrelevant to the disposition of this appeal.

[3]The district court applied this enhancement after concluding that Stone was involved in the murder of Bolter–one of the four predicate acts charged in Count One–for the purpose of preventing his further cooperation with the government's investigation into the RICO activities of Stone and his associates.

*Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). This reasonableness inquiry has both a procedural and a substantive component. *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). Stone alleges both procedural and substantive unreasonableness, and we address each inquiry in turn, beginning with Stone's procedural reasonableness challenge.

A.

The procedural reasonableness requirement seeks to ensure that a sentencing court explains its reasoning to a sufficient degree to allow for reasonable appellate review. *Jackson*, 408 F.3d at 305. Although district courts are no longer bound by the sentencing ranges contained in the guidelines, a district court must, in imposing sentence, consider the applicable guidelines range as one of a number of factors enumerated in 18 U.S.C. § 3553(a). *Id.* at 304. The court need not explicitly consider each of the § 3553(a) factors; a sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion. *See United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006) (citing *Webb*, 403 F.3d at 383-85). Moreover, satisfaction of the procedural reasonableness requirement does not depend on a district court's engaging in a rote listing or some other ritualistic incantation of the § 3553(a) factors. *See United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006); *see also United States v. Williams*, 436 F.3d 706, 708-09 (6th Cir. 2006).

In arguing that his sentence is procedurally unreasonable, Stone contends that the district court failed to consider all of the factors outlined in 18 U.S.C. § 3553(a). Stone's argument is unpersuasive. A review of the sentencing transcript reveals the district court's thoughtful review of the evidence before it and thorough consideration of all the relevant sentencing factors. In sentencing Stone to the maximum term authorized by statute and outside the advisory guidelines range, the district court

4

expressed its belief that the sentence was necessary in light of the serious nature of the charges against Stone, Stone's extensive criminal history, and the compelling evidence of his involvement in serious crimes such as arson, burglary, and the intentional murder of a co-conspirator. *See* 18 U.S.C. § 3553(a)(1) (relating to the "nature and circumstances" of the offense and the "history and characteristics" of the defendant). The district court also observed that the absence of any expression of contrition on Stone's part coupled with his extensive and egregious criminal conduct necessitated a sentence greater than that recommended by the guidelines in order to (1) reflect the seriousness of his offense, (2) deter future criminal conduct, (3) promote respect for the law, (4) provide just punishment, and (5) protect the public from future criminal activity. *See* § 3553(a)(2)(A)-(C).

While the district court did not explicitly reference each of the § 3553(a) factors, the record is sufficient to allow for meaningful appellate review. *See United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006) ("[Procedural reasonableness review] requires asking whether the district court adequately considered and expressed its application of the relevant factors listed in 18 U.S.C. § 3553(a) to permit meaningful appellate review.") (internal quotation marks omitted). The record in this case indicates the district court's consideration of the relevant sentencing factors, and the district court communicated a clear rationale for its sentence.

Although Stone concedes that the district court considered a number of the § 3553(a) factors, he argues that the district court's failure to make a specific reference to § 3553(a)(2)(D) and § 3553(a)(6) renders his sentence procedurally unreasonable. His argument is unavailing. As to § 3553(a)(2)(D),[4] Stone fails to demonstrate how this factor was relevant to his particular sentence.

---

[4]Section 3553(a)(2)(D) directs the sentencing authority to consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Both in his briefing and at oral argument, Stone has neglected to offer any argument as to the relevance of this sentencing factor. He does not point to any evidence regarding his individual need for educational, vocational, or medical services that should have impacted the district court's sentencing decision. It appears Stone seeks to require the district court to follow a particular script in imposing a sentence, reciting each factor by rote. Such an approach has been rejected by this court. Because Stone offers nothing in the way of argument to explain how this factor was *relevant* to *his* case, the district court committed no error in failing to reference it specifically.

With respect to subsection (a)(6), Stone also has not demonstrated that the district court erred in failing to reference the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In his brief, Stone makes a passing reference to the fact that several of his co-conspirators received sentences that differed in length from his own. Stone first directs the court's attention to Johnson, who received a life sentence resulting from the jury's finding that he was involved in the murder of Bolter. Stone received a significantly lighter sentence, despite the fact that the district court was convinced that he was also implicated in this killing, because the Rule of Lenity precluded the district court from finding that the *jury* held him criminally responsible for this act. Stone next notes that Dabney received a sentence of only fifty-five months, but as the government observes in its brief, Dabney was not implicated in the murder of Bolter, agreed to plead guilty to the charges against him, and cooperated with the government by testifying against Stone and Johnson. As a result of his cooperation, the government filed and the district court granted a motion pursuant to U.S.S.G. § 5K1.1 for a downward departure. Finally, Stone correctly observes that Curtis Hardin, one of his co-conspirators, was never

prosecuted for his involvement in the criminal enterprise. However, Hardin's cooperation with the authorities resulted his receiving a grant of immunity from prosecution.

While Stone has identified a number of sentencing disparities, each can be explained. Subsection (a)(6) is concerned with *unwarranted* sentencing disparities, and the record reveals that the disparities identified by Stone are fully justified. Although the district court did not refer to subsection (a)(6) directly, the district court explained its reasons for deviating from the guidelines. Implicit in its discussion is a recognition of the need to sentence Stone in a way that reflects his *individual* characteristics and to avoid disparities that would be unfair or unjustified. Stone cannot successfully argue that the district court's failure to address these specific disparities or refer to subsection (a)(6) by name was erroneous. Because the district court clearly communicated the reasoning underpinning its decision and because Stone has pointed to no relevant evidence that the district court should have considered but did not, the sentence is procedurally reasonable. *See United States v. Dexta*, 470 F.3d 612, 615 (6th Cir. 2006).

## B.

We next address Stone's claim that a sentence of 240 months is substantively unreasonable. The law of this circuit draws a distinction between sentences that are within the recommended guidelines range and those outside of that range. Whenever a district court imposes a sentence that falls within the applicable guidelines range, that sentence is treated with a presumption of reasonableness; however, the fact that the district court elects to sentence outside of the recommended guidelines range does not render the sentence presumptively unreasonable. *See United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007). In evaluating the substantive reasonableness of a sentence falling outside the recommended range, this circuit has adopted the concept of proportionality review:

"when the district court independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review: 'the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a)' must be." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)) (ellipsis in original); *see also United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007).

In its decision to go above the guidelines range and sentence Stone to the maximum penalty allowable under the statute, the district court relied on a number of factors: (1) Stone's extensive criminal history spanning some thirty years; (2) evidence of Stone's involvement in increasingly more serious criminal activity; (3) the dangerous character of Stone's criminal activity that gave rise to the instant indictment: namely, arson and murder; (4) Stone's complicity in the murder of Bolter; (5) the absence of any apparent remorse on Stone's part; (6) the district court's sense that crime had become a way of life for Stone; and (7) the consequent need for greater punishment to deter Stone and to protect the public from future criminal conduct on his part. According to the district court, the guidelines recommendation was insufficient in two specific respects. First, the Criminal History Category of VI, the maximum under the guidelines, failed adequately to reflect the seriousness of Stone's prior criminal conduct. Second, though the guidelines range included a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1, the degree of the enhancement was insufficient to reflect the egregious nature of the obstructive conduct giving rise to that enhancement–that is, Stone's involvement in the murder of Bolter.

While Stone does not take issue with the district court's findings regarding the relevant factors, he nevertheless argues that the sentence imposed is substantively unreasonable. Citing *Davis*, Stone

8

asserts that the district court's chosen sentence, a sixty percent variance from the top end of the guidelines range, was both disproportionate and unreasonable. Under proportionality review, the question this court must answer is whether the district court has identified sufficiently compelling circumstances to justify the substantial degree of its variance from the guidelines recommendation.

While the district court's decision to sentence Stone to the statutory maximum constituted a substantial variance from the top end of the range recommended by the guidelines, the district court's weighing of the relevant factors was not unreasonable. The district court weighed the relevant evidence and made a considered judgment that the punishment recommended by the guidelines was inadequate in this case.

There is no question that the district court appropriately considered Stone's lengthy and extensive criminal history. In fact, the guidelines themselves contemplate an upward departure when the sentencing court determines that "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . . ." U.S.S.G. § 4A1.3(a)(1). In contrast to the sentencing court in *Davis*, the district court in this case exercised its discretion to vary from the guidelines recommendation based at least in part on a consideration that the Sentencing Commission has recognized as a proper ground for departure. *See Davis*, 458 F.3d at 498 (noting the district court's partial reliance on the defendant's age in granting an extraordinary variance from the bottom end of the guidelines even though age is not generally considered a relevant factor for purposes of granting a downward departure under the guidelines). The mere fact that the guidelines contemplate exactly the sort of action taken by the district court does not make its decision *per se* reasonable, but this fact does indicate that the district court's reasoning falls in line with nearly twenty years of "careful

consideration of the proper sentence for federal offenses." *United States v. Buchanan*, 449 F.3d 731, 736 (6th Cir. 2006) (Sutton, J., concurring) (internal quotation marks omitted). Although much of Stone's prior criminal conduct appears to have been nonviolent, Stone has managed to find himself on the opposite side of the law repeatedly over the past thirty years. The district court's description of Stone's being "involved in criminal activity as a way of life" is apt.

The district court also considered the testimony it heard implicating Stone in the murder of Bolter and expressed the belief that the guidelines range did not adequately address the seriousness of this conduct and the need to ensure that Stone will be deterred from such behavior in the future. Stone has maintained throughout that the Rule of Lenity precludes the district court from concluding that the *jury* found him guilty of committing this murder, and the district court apparently accepted this proposition. However, Stone has not challenged the district court's reliance on its *own* independent finding that Stone was involved in Bolter's murder in applying the obstruction of justice enhancement, its weighing of the § 3553(a) factors, and its ultimate decision to vary from the guidelines recommendation. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) (reaffirming the propriety of judicial factfinding based on the preponderance of the evidence standard for sentencing). Stone's involvement in the murder of a co-conspirator sets him apart from other individuals who might be convicted of similar conduct and subject to a similar guidelines recommendation. Stone has demonstrated a continued unwillingness to conform his behavior to the requirements of the law and a willingness to sacrifice another's life in order to avoid criminal prosecution.[5] Given the district

---

[5]Stone's case stands in stark contrast with our recent decision in *United States v. Poynter,* where we reversed the district court's decision to sentence the defendant to 720 months, varying from a guidelines recommendation of 188-235 months. *United States v. Poynter*, No. 05-6508, slip op. at 1-2 (6th Cir. July 27, 2007). In reversing the district court, we noted the absence of any meaningful distinction between the defendant and other repeat sex offenders that would support the

court's further observation that Stone remains unrepentant, these aggravating factors fully justify the district court's decision to issue a non-guidelines sentence. When viewed in its entirety, the district court's § 3553(a) analysis provides ample support for both its decision to vary from the guidelines and for the degree of its chosen variance. Thus, the sentence of 240 months is substantively reasonable.

## III.

For the foregoing reasons, we affirm.

---

district court's decision to vary more than 200% from the top end of the guidelines range. *Id.* at 5-6. Moreover, the district court in *Poynter* failed to explain why the particular facts and circumstances of that case warranted such a wide variance–a variance that would have left no room in the sentencing range available by statute to accommodate more serious offenders. *See id.* In this case, the district court went to great lengths to explain why it believed that the guidelines recommendation was inadequate and why the particular facts of Stone's case warranted imposition of the statutory maximum. Stone's involvement in a murder certainly places him in that class of RICO offenders for whom greater punishment is warranted, and we find no difficulty with the district court's decision that the statutory maximum was an appropriate sentence in this case.